## HESSER v. CHICAGO & WELLESTON COAL CO.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1907.)

### No. 1,312.

SALES—CONTRACT FOR SALE OF COAL—CONSTRUCTION.

A contract for the sale and purchase of a large quantity of "New River" coal, to be delivered at Chicago, which provided that it should be approved by the shippers, and which was approved and signed by the owners of certain mines in the New River district, bound the seller to

furnish coal from such mines, and the purchaser was not bound to accept coal from others in such district, even though it may have been the same or equally good in quality.

In Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

Plaintiff in error's action was for damages for breach of two contracts. At the conclusion of the evidence the court directed a verdict for defendant.

The first contract, averred to have been executed at Chicago on August 28, 1903, reads as follows:

"John T. Hesser & Company.

"August 20th, 1903.

"New River Coal Contract.

"The Chicago & Welleston Coal Company buy from John T. Hesser & Company, and John T. Hesser & Company sell to the Chicago & Welleston Coal Company three thousand five hundred (3,500) tons of New River Run of mine coal at three dollars and eighty cents ($3.80) per ton of two thousand (2,000) lbs., delivered f. o. b. cars at Chicago, Illinois, and to be shipped at the rate of seventy (70) tons daily average, subject to conditions below, commencing at once, and ending October 31st, 1903.

"Terms.

"Railroad weights at usual points of weighing to govern settlements.

"Freight to be paid by buyer and deducted on invoice of seller.

"Buyer to remit on or before the 15th of each month for all shipments of the preceding month.

"Conditions.

"In case of strikes, accidents, deficient transportation, or other cause unavoidably causing stoppage or partial stoppage of the works of the producer of this coal, or of its shipment, or in case of strikes or accidents unavoidably causing stoppage or partial stoppage of the works of the buyer, deliveries herein contracted for may be suspended, or partially suspended, as the case may be, by immediate notice to that effect given to the other party. Such interruption, however, shall not invalidate the remainder of this contract, but on the removal of the cause of the interruption, deliveries shall be continued at the specified rate. No deficiency in shipments, caused by interruptions mentioned, shall be made up except by mutual agreement. This contract to be approved by shippers.　　　　　　　　　　　John T. Hesser & Company,

　　　　　　　　　　　　　　　　　　　　　　　"P. H. Hesser, Manager.

"Accepted:

　"Chicago & Welleston Coal Company,

　　"By F. J. Posta, Mgr.

"Accepted:

　"The MacDonald Colliery Co.,

　"Sugar Creek Coal and Coke Co.,

　"The White Oak Fuel Co.,

　　"S. Dixon, Mgr.

"Aug. 28, 1903."

These parties at the same time executed another contract, covering deliveries from November 1, 1903, to March 31, 1904, and differing from the first only in respect to quantity and price.

The further facts necessary to the determination of the case are stated in the opinion.

N. W. Hacker, for plaintiff in error.

Fred A. Bangs, for defendant in error.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

BAKER, Circuit Judge, after stating the facts, delivered the opinion of the court.

Defendant was a retailer of coal at Chicago; plaintiff, a jobber, with offices at Cincinnati and Chicago; and the companies for which Dixon signed as manager were miners of coal in the New River district.

The construction of the contracts was matter of law for the court. Therein defendant is identified as buyer, plaintiff as seller, and the Dixon collieries as producers and shippers of the, coal which defendant was binding itself to take. That the subject-matter of the contracts was New River coal from the Dixon collieries is the result, whether the bare contracts be taken as expressive of the mutual agreements of parties negotiating with each other at Chicago on August 28th, or the oral testimony also be considered which shows that defendant signed at Chicago, plaintiff at Cincinnati, and Dixon at the mines, and that before signing defendant and plaintiff's Chicago agent agreed that the Dixon collieries should become the producing and shipping parties to the contracts.

Plaintiff, basing his conduct on the first contract, tendered defendant at Chicago 12 cars of New River coal, only a few of which came from the Dixon collieries. The record demonstrates beyond cavil that plaintiff took and continually held the position that the contracts required defendant to accept New River coal from any of the mines in that district. And, since plaintiff never separated out the Dixon coal and tendered that, nor offered to go on with the contract by furnishing Dixon coal exclusively, the breach can be predicated on nothing less than defendant's refusal to accede to plaintiff's contention.

Plaintiff first insists that the contract only calls for New River coal generally. That was a question of law which, in our judgment, the court rightly ruled against him.

This is followed by the proposition that a tender of any New River coal was a substantial compliance with the contract as the court construed it. Plaintiff introduced evidence that New River coal from the other collieries was substantially the same in quality and value as that from the Dixon collieries. Defendant's evidence denied this. So here was a disputed question to go to the jury, if plaintiff was right in claiming that defendant was bound to accept something just as good. But if "just as good" is the test, why not coal from anywhere that is substantially the same? And, if a seller may insist that a jury decide the "just as good" question, what becomes of the buyer's right of selection and his right to incorporate that in the contract? Substantial compliance might be a question for the jury in a case like this, if defendant had rejected Dixon coal on the ground that it did not come up to contract; but here it was for the defendant, not the jury, to say whether a substitute was acceptable.

Waiver or estoppel is relied on. Passing the question whether, under an issue framed by a special count on a contract and a general denial, plaintiff could prove an enlarged or substituted contract, the burden is on plaintiff to point out evidence which would have justified the jury in drawing the inference that defendant accepted the asserted new contract. Without rehearsing the evidence, it is enough to say

that an examination of the entire record satisfies us that the only permissible inference was quite the contrary.

No coal was shipped under the second contract. Plaintiff testified that he "was able and willing to ship seventy-five tons a day of New River run of mine coal to the defendant from the 1st day of November, 1903, to the 31st day of March, 1904." This sufficiently illustrates plaintiff's theory of the case, and it accords with his attitude throughout, that the furnishing of any New River coal of substantially the same quality and value as that from the Dixon collieries would be a compliance with the contract.

The judgment is affirmed.